IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CARLOS R. RAMIREZ,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER**<br><br><br>Case No. 2:13-cv-240 BCW<br><br>Magistrate Judge Brooke C. Wells |

　　　　　This matter is before the Court on Plaintiff Carlos Ramirez's appeal from the final decision of the Commissioner of Social Security finding him not disabled pursuant to an Administrative Law Judge's January 24, 2012 decision. The ALJ's decision was made final by the Appeals Council denying Mr. Ramirez further review.[1] After careful consideration of the record, relevant law, and the parties' memoranda, the Court has determined that oral argument is unnecessary and decides this case based upon the record before it.[2] For the reasons set forth below, the Court affirms the decision of the Commissioner.

---

[1] Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. See *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

[2] *See* Scheduling Order, docket no. 17 (noting that [o]ral argument will not be heard unless requested at the time of [the] filing first briefs by either party and upon good cause shown").

## BACKGROUND[3]

### A. Procedural History

In October 2008, Plaintiff Carlos Ramirez applied for disability benefits under Titles II and XVI of the Social Security Act (Act) alleging disability beginning March 15, 2007.[4] Plaintiff's claim was denied initially on February 23, 2009, and upon reconsideration.[5] Plaintiff made a request for an administrative hearing which was held on July 16, 2010.[6] On September 22, 2010, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act.[7] Plaintiff appealed and the Appeals Council remanded the case back to the ALJ for a second administrative hearing. The Appeals Council specifically directed the ALJ to 1) give further consideration to the Claimant's maximum residual functional capacity during the entire period at issue in this case; and 2) to obtain supplemental evidence form a vocational expert to help determine the effect of the Claimant's limitations on the available occupational base.[8]

The ALJ held a new hearing on January 3, 2012.[9] Following the hearing the ALJ issued a partially favorable decision on January 24, 2012, finding Mr. Ramirez disabled beginning on June 25, 2010, but not prior to that date.[10] Mr. Ramirez earned enough Social Security credits to be eligible for disability benefits if he was found disabled on or prior to March 31, 2010, which

---

[3] The parties fully set forth the medical history in their respective memoranda. The Court finds it unnecessary to repeat that record in detail here. Instead, the Court notes those items that are pertinent to its decision.

[4] Tr. 260-266, 267-273. Tr. refers to the official transcript of the proceedings in this matter.

[5] Tr. 98-99, 102-103.

[6] Tr. 72-97.

[7] Tr. 104-24.

[8] Tr. 13.

[9] Tr. 35-71.

[10] Tr. 9-34.

is Plaintiff's last insured date.  Thus, the ALJ's decision was partially favorable finding Plaintiff disabled and eligible for Title XVI Supplemental Security Income but not disabled under Title II of the Act because Plaintiff became disabled after his Social Security credits expired.[11]

Plaintiff filed an appeal of the ALJ's partially favorable decision and the Appeals Council denied Plaintiff's request for review[12] making the ALJ's second decision the Commissioner's final decision for purposes of judicial review.[13]  This appeal followed.

Plaintiff alleges disability beginning on March 15, 2007 due to debilitating back pain and a seizure disorder.[14]  Mr. Ramirez graduated from high school and has worked as a coal miner and maintenance worker.[15]  Plaintiff was 47 years old on the date the ALJ found him disabled.

### B. Medical History

From 2006 to 2009 Plaintiff visited various medical practitioners and doctors complaining of back pain, difficulty sleeping and problems with his legs arising from back pain.[16]  These visits included multiple trips to see Dr. David Petron, an orthopedist, in 2006 and 2007 prior to Plaintiff's alleged disability date.  Although Plaintiff complained of pain at these visits, each time Dr. Petron found Plaintiff to be within the normal range of testing.[17]

On March 22, 2007—shortly after Plaintiff's alleged onset date—Mr. Ramirez returned

---

[11] Tr. 9-34.

[12] Tr. 1-6.

[13] 20 C.F.R. §§ 404.981, 416.1481, 422.210(a).

[14] Tr. 267, 356.

[15] Tr. 357.

[16] *See* op. p. 2-5.

[17] Tr. 19-20.

to Dr. Petron complaining of back pain. On that date Dr. Petron's tests were negative.[18] In May 2008, Plaintiff visited Dr. Petron again and told him that although he was experiencing pain and had not been able to work, he still felt "as if he is able to work."[19]

In mid-September 2008 Dr. Petron reviewed a recent MRI that showed degenerative disc disease with some neuroforaminal narrowing in Plaintiff's lower back. Shortly thereafter Plaintiff consulted with another orthopedist, Dr. Alpesh Patel, who noted almost full strength in Plaintiff's legs and other tests near normal limits.[20] In October 2008 Dr. Petron advised that Plaintiff undergo a functional capacity test.

The following month in November 2008 Plaintiff underwent a Functional Capacity Evaluation (FCE) with a physical therapist Sarah Marchant. At the FCE Mr. Ramirez reported that he was working occasionally and was active for about "six hours per day."[21] Testing results from the FCE indicated that Plaintiff met the medium level physical demand characteristics for work.[22]

Plaintiff underwent another FCE with Dr. Bruce Newton on September 29, 2009. The testing results from this FCE were largely normal and Dr. Newton concluded that surgery was not advisable.[23] Dr. Newton confirmed the previous 5% whole person impairment assigned in 1995 but found no basis to change that assessment.

Approximately six months before this FCE, in mid-February 2009, Dr. David Peterson a

---

[18] Tr. 20.

[19] Tr. 464.

[20] Tr. 458-59.

[21] Tr. 522.

[22] Tr. 527.

[23] Tr. 22-23.

state agency physician, reviewed Mr. Ramirez's medical file. Dr. Peterson opined that Plaintiff had capabilities that allowed him to work.[24]

In July 2009 Plaintiff returned to Dr. Patel. Dr. Patel noted that injections had not improved Plaintiff's pain, but he once again did not recommend surgery.[25] Instead, near the end of August 2009 Dr. Patel recommended that Plaintiff visit a pain specialist for further treatment options.[26] Dr. Patel's notes from the visit state that Mr. Ramirez understood his recommendation.[27] Approximately a year later Plaintiff consulted with pain management specialist Dr. Scott Junkins on June 25, 2010. Dr. Junkins sent Plaintiff to physical therapy and performed injections.[28]

### C. ALJ's Decision

In considering Mr. Ramirez's claims the ALJ followed the five-step sequential process for evaluating disability claims as set forth in the regulations.[29] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 15, 2007.[30] At steps two and three, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine and a seizure disorder. None of these impairments, however, met or equaled a listing.[31] Next, the ALJ assessed Plaintiff's residual functional

---

[24] Tr. 482-88.

[25] Tr. 509-512.

[26] Tr. 509.

[27] Tr. 509.

[28] Tr. 560, 566-71.

[29] 20 C.F.R. § 404.1520. Tr. 15-28.

[30] Tr. 15.

[31] Tr. 16-17. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 (the Listings).

capacity (RFC) by evaluating the evidence in the record.[32] The ALJ then found that prior to June 25, 2010, Plaintiff had the RFC to perform a range of sedentary to light unskilled work as defined in 20 C.F.R. §§ 404.1567(a) and (b) with certain restrictions. These restrictions included *inter alia*, lifting/carrying 10 pounds occasionally and three to five pounds frequently; sitting for six hours per eight hour day, and no more than 15 to 20 minutes at a time; standing or walking for six hours per eight hour day, and no more than 15 to 20 minutes at a time; stopping on no more than an "occasional" basis; and no work at more than a low stress level, which means a low production level with less than occasional working with the general public.[33]

The ALJ next found that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible.[34] At step four, the ALJ found that Mr. Ramirez was unable to perform any past relevant work such as a minor and farrier.[35] Then at step five, based upon the testimony of the Vocational Expert and Plaintiff's RFC, the ALJ found that prior to June 25, 2010, there were jobs that Plaintiff could have performed. These included a leaf tier, office helper, airline security representative, and fingerprint clerk.[36] Thus from Plaintiff's alleged onset date, March 15, 2007 to June 24, 2010, Plaintiff was not disabled.

Finally, the ALJ conducted a separate step five analysis of Plaintiff for June 25, 2010 and onward.[37] For this time frame the ALJ found that Plaintiff's impairments resulted in a reduced

---

[32] Tr. 17.

[33] Tr. 17-28.

[34] Tr. 18-23.

[35] Tr. 26.

[36] Tr. 27.

[37] Tr. 28.

RFC that would preclude him from performing past or other work in the national economy.[38] The ALJ then found that based on the evidence in the record Plaintiff became disabled on June 25, 2010. Because Plaintiff was not under a disability by his last insured date, March 31, 2010, the ALJ denied Mr. Rairez disability benefits but did award him Supplementary Security Income under Title XVI of the Act.

## STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the ALJ's factual findings and whether the correct legal standards were applied.[39] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[40]

Additionally, the ALJ is required to consider all of the evidence; however, the ALJ is not required to discuss all evidence.[41] In reviewing the ALJ's decision the Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[42] The Court, however, may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]."[43] Where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.[44] Further, the Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the

---

[38] Tr. 28.

[39] See *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[40] *Id*. (citation omitted).

[41] *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2000).

[42] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[43] *Lax*, 489 F.3d at 1084 (citation omitted).

[44] See *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

Court would justifiably have made a different choice had the matter been before it de novo.'"[45]

## DISCUSSION

This case presents somewhat of an unusual factual situation. The ALJ did find that Plaintiff was disabled starting June 25, 2010. Plaintiff, however, alleges disability starting March 15, 2007 and is only covered under the Social Security disability program through his last insurability date, March 31, 2010. Thus, to be awarded additional benefits Plaintiff must establish that prior to March 31, 2010 he was disabled pursuant to Social Security regulations.

Plaintiff argues the ALJ's finding that he was disabled starting June 25, 2010, but not prior to that date, is not supported by substantial evidence. Plaintiff further argues that the ALJ's citation to his failure to make an appointment with Dr. Junkins at the pain clinic is incorrect because Plaintiff reported to a physician's assistant in April 2010 that he was unaware of that recommendation. Further, Plaintiff promptly scheduled his first visit with the pain clinic shortly thereafter. Finally, Plaintiff argues that the reasons giving in support of the ALJ's decision by the Commissioner are post-hoc rationalizations. The Court is not persuaded by these arguments.

First, as set forth above and as laid out in more detail in the ALJ's decision, there is substantial medical evidence to support the ALJ's decision. For example, in 2007 and 2008 multiple doctor visits resulted in normal results. In addition, Plaintiff himself stated multiple times after his alleged disability date that he was either working or capable of work with the last assertion being made in November 2008 during a FCE. In February 2009 a state agency physician also opined that Mr. Ramirez was capable of work. Finally, on September 29, 2009, Mr. Ramirez underwent another FCE with Dr. Newton. The results from this test were once

---

[45] *Lax*, 489 F.3d at 1084 (quoting *Zoltanski*, 372 F.3d at 1200).

again fairly normal and he found no basis to change the prior 5% whole person impairment assigned in 1995.[46]

Second, in August 2009 Dr. Patel explicitly stated in his visit notes that Plaintiff "has verbalized understanding as to the contents of this note."[47] This included the recommendation to visit with a doctor at the pain clinic. The note was made contemporaneously to Plaintiff's visit with Dr. Patel. Plaintiff contests this note by pointing to other contradictory evidence in the record. The Court, however, declines Plaintiff's invitation to reweigh this evidence because it is not the province of this Court to do so.[48]

Finally, the Court finds the Commissioner's arguments are not post-hoc rationalizations as asserted by Plaintiff. Rather, they are properly made in response to Plaintiff's arguments and are supported in the record.

---

[46] Tr. 22-23.

[47] Tr. 509.

[48] *Lax*, 489 F.3d at 1084 (citation omitted); *cf Marbury v. Madison*, 5 U.S. 137, 170, 1803 WL 893, 21 (U.S.Dist.Col.,1803) ("The province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have discretion. Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court.").

## CONCLUSION

For the reasons set forth above, the Court finds that the ALJ's decision is supported by substantial evidence. The decision of the Commissioner is AFFIRMED and the Clerk of the Court is directed to close this case.

Dated this 5th day of February, 2014.

BY THE COURT:

Brooke C. Wells
United States Magistrate Judge